IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CAROL MONICA WINTERSBERGER,

      Plaintiff,

vs.                                                                        1:18-cv-00389-LF

ANDREW M. SAUL, Commissioner
of the Social Security Administration,[1]

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Carol Monica Wintersberger's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing with Supporting Memorandum (Doc. 15), which was fully briefed on January 16, 2019. Docs. 16, 18, 19. The parties consented to my entering final judgment in this case. Docs. 3, 5, 6. Having meticulously reviewed the record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards when assessing Ms. Wintersberger's treating physician's opinion. The Court, therefore, GRANTS Ms. Wintersberger's motion and remands this case for further proceedings.

### I.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

> The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.

*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotations and citations omitted) (brackets in original).

II.  **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a)

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id*.

### III. Background and Procedural History

Ms. Wintersberger is a 59-year-old woman who lives in Albuquerque, New Mexico, with her two small dogs. AR 31, 149.[4] Ms. Wintersberger earned her bachelor's degree in Business Computer Systems from the University of New Mexico, and worked as a program analyst and a

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 10-1 comprises the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

help desk analyst for more than 20 years. AR 31–33, 153. Ms. Wintersberger stopped working on October 2, 2014, because her job was eliminated. AR 33, 152.

Ms. Wintersberger filed her initial application for Disability Insurance Benefits ("DIB") on November 12, 2014, alleging disability beginning on October 2, 2014, due to multiple sclerosis and herpes simplex keratitis in her left eye. AR 134–35, 152. The Social Security Administration ("SSA") denied her claims initially and on reconsideration. AR 50–70. Ms. Wintersberger requested a hearing by an ALJ. AR 85–86. On February 8, 2017, ALJ Doug Gabbard held a hearing, at which Ms. Wintersberger and a vocational expert ("VE") testified. AR 26–49. ALJ Gabbard issued his unfavorable decision on March 23, 2017. AR 11–25.

Following the five-step sequential evaluation process, the ALJ determined that Ms. Wintersberger met the insured status requirements of the Social Security Act through December 31, 2019. AR 16. At step one, the ALJ found that Ms. Wintersberger had not engaged in substantial, gainful activity since October 2, 2014, the alleged onset date. *Id*. Because Ms. Wintersberger had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two. At step two, the ALJ found that Ms. Wintersberger's only severe impairment is multiple sclerosis. AR 16. The ALJ found that Ms. Wintersberger's obesity, left-eye interstitial keratitis from herpes simplex virus, dural arteriovenous fistula status post embolization, hyperlipidemia, bladder urgency and frequency, and intermittent right arm numbness, "considered singly and in combination, do not cause more than minimal limitation in her ability to perform basic work activities and are therefore nonsevere." *Id*.

At step three, the ALJ found that none of Ms. Wintersberger's impairments, alone or in combination, met or medically equaled a Listing. AR 17. Because the ALJ found that none of

the impairments met a Listing, the ALJ assessed Ms. Wintersberger's RFC. AR 18–20. The ALJ found that Ms. Wintersberger:

> has the residual functional capacity to lift and/or carry 20 pounds occasionally, and 10 pounds frequently; to stand and/or walk for four hours total during an eight hour work day; and to sit for about six hours total during an eight hour work day. She can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She can occasionally balance. She can frequently stoop, kneel, crouch, or crawl. She can do no walking on uneven surfaces. She must avoid all exposure to hazards, such as open flames, unprotected heights, and dangerous moving machinery. In other words, she can perform less than the full range of "light" work.

AR 18 (citation omitted).

Relying on the VE's testimony, the ALJ found that Ms. Wintersberger was not disabled at step four because she was able to perform her past relevant work as a technical support representative both as she actually performed it and as it is generally performed in the national economy. AR 20. Because the ALJ found Ms. Wintersberger was not disabled at step four, the ALJ did not reach step five.

Ms. Wintersberger requested review by the Appeals Council, which denied her request on March 12, 2018. AR 1–6, 133. Accordingly, the ALJ's decision is the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. § 404.984. Ms. Wintersberger timely filed her appeal to this Court on April 26, 2018.[5] Doc. 1.

**IV.    Ms. Wintersberger's Claims**

Ms. Wintersberger raises two main arguments and several sub-issues for reversing and remanding this case: (1) that the ALJ's RFC was in error because he (a) failed to weigh or improperly weighed the evidence from her treating physicians, (b) failed to properly assess her

---

[5] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2–3.

vision limitations, and (c) failed to properly assess her symptoms; and (2) the ALJ's finding that she can perform her past relevant work is contrary to the evidence because (a) the errors in the RFC omitted limitations that tainted the past work analysis, and (b) the ALJ failed to properly assess the functions of her past work to Ms. Wintersberger's actual abilities. Doc. 15.

Because I find that the ALJ failed to properly weigh the opinion of Dr. Ford, Ms. Wintersberger's treating physician, I will remand this case. I do not address the other alleged errors, including the sub-issues raised throughout plaintiff's briefing, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**V.  Discussion**

  A. <u>The ALJ's Assessment of Dr. Ford's Medical Opinion</u>

Ms. Wintersberger contends that the ALJ failed to properly assess the opinion of Dr. Ford, her treating physician. Doc. 15 at 12–16. Treating physicians may offer a medical opinion with regard to the claimant's symptoms, diagnosis, and prognosis, as well as work-related physical and mental limitations. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (citing 20 C.F.R. § 404.1527(a)(2)[6]). A "medical opinion" is a statement "from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Pursuant

---

[6] The regulation applicable to this case is § 404.1527, "Evaluating opinion evidence for claims filed before March 27, 2017." 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.").

6

to the "treating physician rule,"[7] "the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley*, 373 F.3d at 1119; 20 C.F.R § 404.1527(c)(2).

When presented with a treating medical source opinion, the ALJ must first determine whether the opinion is entitled to "controlling weight,"[8] and if not, "treating source medical opinions are still entitled to deference and must be weighted using all of the factors provided in § 404.1527." *Id*. Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d at 1301 (10th Cir. 2003); *see also* 20 C.F.R. § 404.1527(c)(2−6). While an ALJ is not required to discuss each factor, an ALJ must give good reasons for the weight assigned to a treating physician's opinion, reasons "that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotations and citations omitted). Further, an ALJ must give specific, legitimate reasons for rejecting a treating physician's opinion completely. *Id.*

---

[7] Although the Social Security Administration has rescinded the treating physician rule, that rescission only applies to cases filed on or after March 27, 2017. As this case was filed in November 2014, the treating physician rule still applies. *See* SSR 96-2P, 2017 WL 3928298 (March 27, 2017).

[8] A medical source opinion is entitled to "controlling weight," if the medical opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(b)(2); *see also Langley*, 373 F.3d at 1119. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

In this case, Dr. Ford opined that

> after 30 years since diagnosis, [Ms. Wintersberger] has some slow progressive disability as [is] reflected in her slowing gait and instability. She is at risk for falls and also has significant MS related fatigue that makes it difficult for her to perform tasks. She also has cognitive disabilities that would preclude her from any meaningful employment.

AR 383. The ALJ gave Dr. Ford's opinion "little weight," effectively rejecting the doctor's opinion. AR 19; *Quintero v. Colvin*, 567 F. App'x 616, 620 n.6 (10th Cir. 2014) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)). Ms. Wintersberger first argues that the ALJ substituted his own medical expertise for that of the doctor, which is prohibited. Doc. 15 at 12. She further contends that the ALJ did not provide sufficient reasons for "rejecting" Dr. Ford's opinion and argues that the ALJ failed to consider the six regulatory factors before rejecting the opinion. *Id*. at 13. The Commissioner responds that the ALJ reasonably found that Ms. Wintersberger's allegations of fatigue and cognitive limitations are not supported by the record. Doc. 16 at 14–16. The Commissioner's arguments are not persuasive.

The ALJ found that Dr. Ford's opinion lacked supportability and consistency. The ALJ discounted Dr. Ford's opinion because "his statements are not substantiated by the record, and [Dr. Ford] attributes the 'slow progressive disability' to her slowing gait and instability." AR 19. The ALJ pointed out that Dr. Ford's other examination findings included a "full range of motion and intact strength and sensation," which are contained in the same notes in which he expressed his opinion. *Id*.; *see also* AR 382–83. While lack of support and inconsistency are legitimate reasons for rejecting a medical opinion, they only account for the ALJ's rejection of part of Dr. Ford's opinion. The fact that Ms. Wintersberger continues to have a full range of motion, and intact strength and sensation may undermine Dr. Ford's opinion that her slow gait and instability make it difficult for her to complete tasks. But her full range of motion, and intact strength and

sensation do not address the non-exertional impairments of fatigue and cognitive disabilities that Dr. Ford states "would preclude [Ms. Wintersberger] from any meaningful employment." AR 383.

Fatigue is a symptom of multiple sclerosis. *See* https://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/symptoms-causes/syc-20350269 (last visited August 1, 2019). The ALJ gave little weight to Dr. Ford's opinion regarding Ms. Wintersberger's fatigue and cognitive disabilities because it was "not substantiated by the record." AR 19. The ALJ does not explain, however, why Dr. Ford's opinion is not substantiated. There are several instances in the record where Ms. Wintersberger reported that she was experiencing fatigue, including her testimony at the hearing. AR 34–35, 172, 188, 198, 204, 219, 288, 343, 362–63, 382–83. Ms. Wintersberger was treated for fatigue ("low energy") from October of 2015 through July of 2016. AR 368–79. The ALJ himself noted several instances when Ms. Wintersberger reported fatigue. AR 19 (citing exhibit 1F, 2F, 6F, 8F, 10F, 11F, 12F, and 13F). Ms. Wintersberger also complained of "decreased short term memory" and "word finding difficulties." AR 382; *see also* AR 35, 40, 189, 288–89, 343. This evidence was uncontroverted.

The ALJ discounted Ms. Wintersberger's complaints of fatigue because a year before Dr. Ford issued his opinion, "she asked her neurologist about exercising daily at the gym."[9] AR 19. This inquiry does not in any way undermine Dr. Ford's opinion, a year later, that Ms. Wintersberger "has significant MS related fatigue that makes it difficult for her to perform

---

[9] The medical records do not state that Ms. Wintersberger wanted to work out "daily" at a gym. Instead, the treatment notes indicate that she "would also like to know if it is okay to work out. She is interested in working out at a gym." AR 342. The ALJ inserted the term "daily" without evidence in the record that Ms. Wintersberger was either interested in daily workouts or that she was capable of daily workouts. Further, although she expressed an interest in working out, at that same doctor's visit, Ms. Wintersberger was experiencing fatigue. AR 343.

tasks." AR 383. It also does not address at all Dr. Ford's opinion that Ms. Wintersberger "has cognitive disabilities that would preclude her from any meaningful employment." *Id*. The ALJ's reasons for rejecting Dr. Ford's opinion are insufficient and do not clearly explain why he rejected that opinion. The ALJ, therefore, failed to apply the correct legal standards when assessing Ms. Wintersberger's treating physician's medical opinion, warranting remand.

B. Remand for Further Proceedings

Ms. Wintersberger asks that if this Court remands this case, that it do so for an immediate award of benefits rather than additional proceedings. Doc. 15 at 21. "When a decision of the Secretary is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In deciding which remedy is appropriate, the Court considers both "the length of time the matter has been pending and whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits." *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (internal citations and quotations omitted). When the Commissioner has failed to satisfy his burden of proof at step five, and when there has been a long delay as a result of his erroneous disposition of the proceedings, remand for an immediate award of benefits may be appropriate. *Ragland*, 992 F.2d at 1060 (remanding for an immediate award of benefits "[i]n light of the Secretary's patent failure to satisfy the burden of proof at step five[ ] and the long delay [of at least four years] that has already occurred as a result of the Secretary's erroneous disposition of the proceedings"). The Commissioner "is not entitled to adjudicate a case ad infinitum until he correctly applies the proper legal standard and gathers evidence to support his conclusion." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993).

Ms. Wintersberger applied for disability in November of 2014. While this case has been pending for more than four years, this is the first time it has been up on appeal. Because the Court remands based on the ALJ's failure to apply the correct legal standards, the Commissioner should be given the opportunity determine whether the correct application of the legal standards affect the decision in this case before an award of benefits is made. Accordingly, I will not remand for an immediate award of benefits. Instead, this case is remanded to the Commissioner for further proceedings consistent with this opinion.

## VI.   Conclusion

For the foregoing reasons, the Court finds that the ALJ failed to apply the correct legal standards when assessing Ms. Wintersberger's treating physician's medical opinion.

IT IS THEREFORE ORDERED that Carol Monica Wintersberger's Motion to Reverse and Remand (Doc. 15) is GRANTED. The Commissioner's final decision in this case is reversed, and the case is remanded for further proceedings.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent